IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANET R., | ) |
| | ) No. 20 C 3304 |
| Plaintiff, | ) |
| | ) Magistrate Judge M. David Weisman |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nanet R., appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Acting Commissioner's decision.

### Background

On October 7, 2017, plaintiff filed an application for benefits alleging a disability onset date of June 1, 2015. (R. 193-202). The application was initially denied on December 4, 2015, and after reconsideration on June 17, 2016. (R. 106-109; 118-124). Following a hearing before Administrative Law Judge David Skidmore (the "ALJ") on September 23, 2017, the ALJ rendered an unfavorable decision. (R. 12-30). The Appeals Council declined review. (R. 1-6). Subsequently, plaintiff filed an appeal with this Court, who reversed the ALJ's decision and remanded the case. (R. 754-765). On September 26, 2019, a second hearing was held in front of the same ALJ. On January 31, 2020, the ALJ rendered another unfavorable decision. The appeals council declined review (R. 673-675), leaving the ALJ's decision as the final decision of the

Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," i.e., " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the

burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 1, 2015. (R. 678). At step two, the ALJ determined that plaintiff had the severe impairments of "carpal tunnel syndrome, bilateral hip osteoarthritis, and left knee osteoarthritis." (R. 679.). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 680). At step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work, with the following limitations: "she can never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crawl, and climb ramps and stairs; and no more than frequently handle and binger bilaterally. She cannot have concentrated exposure to hazards such as unprotected heights or dangerous equipment." (*Id*.).

As an initial matter, we remanded this case in 2019 because the ALJ improperly rejected the January 2016 and June 2017 opinions of plaintiff's treating physician, Dr. Miranda Hart. (R. 762-763). An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2*); see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). An ALJ must submit "good reasons" for

discounting the opinion of a treating physician. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

In January 2016, Dr. Hart opined that plaintiff could grasp, turn, and twist objects for fifteen percent of a workday and perform fine manipulation tasks for twenty percent of a workday. (R. 508). In June 2017, Dr. Hart said that plaintiff could only use her fingers and hands for ten percent of a workday. (R. 581). In June 2019, Dr. Hart said that plaintiff could only use her hands for ten percent of a workday, and her fingers for 30 percent of a workday.[1] (R. 910). In our prior remand order, we found that the ALJ failed to identify objective medical evidence that contradicted Dr. Hart's 2016 and 2017 opinions and failed to acknowledge the evidence that supported those opinions (i.e., the March 2016 EMG showing plaintiff's severe carpal tunnel syndrome). (R. 762-764). Further, we found that the ALJ improperly emphasized the conservative nature of plaintiff's conservative treatment and "considerable" daily activities when evaluating Dr. Hart's opinions. (R. 763).

Considering the case on remand, the ALJ again gave no weight to Dr. Hart's opinions. The ALJ focused on the purported lack of supportability for the opinions within the record, the relatively brief length of the treatment relationship at the time of Dr. Hart's January 2016 opinion, and plaintiff's conservative treatment. (R. 682-683). However, the ALJ only nominally identified medical evidence that supported Dr. Hart's opinions without giving the evidence meaningful consideration. Namely, after acknowledging plaintiff's documented "atrophy at the hypothena eminences bilaterally and reduced grip strength with some atrophy to the muscles that control motion in the little finger," the ALJ merely remarked that: "[a]lthough these findings are

---

[1] Dr. Hart's 2019 opinion was not a part of the record when this case was last before the Court.

significant and support a limitation to frequent handling and fingering, they do not alone support a finding that the claimant is disabled." (R. 683) (citing, *e.g.*, R. 574, 654, 1146).

The ALJ's passing reference to evidence supporting Dr. Hart's opinions—and the ALJ's corresponding, conclusory RFC limitation—are improper. This is particularly true as it relates to the evaluation of Dr. Hart's June 2017 and June 2019 opinions, which were rendered following the plaintiff's EMG confirming severe carpal tunnel syndrome.[2] Further, these opinions were rendered in conjunction with Dr. Hart's findings regarding muscle atrophy and reduced grip strength. Additionally, the ALJ failed to acknowledge that by June 2017—and especially by June 2019—the length of the treating relationship between Dr. Hart and the plaintiff had significantly increased as compared to January 2016, when the ALJ discounted Dr. Hart's opinion in part because of the short treating relationship (only a "few months" at that time). (R. 683). The ALJ was not permitted to "cherry-pick" from mixed results in the record to support a denial of benefits. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir.2010); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (remanding in part due to the ALJ's "selective" discussion of evidence).

As to plaintiff's conservative treatment, the ALJ noted that plaintiff was referred for a surgical consultation in May 2017 but that she never underwent the surgery and that her additional treatment for her carpal tunnel syndrome was "sparse." (R. 682). However, the ALJ did not explore the reasons for plaintiff's lack of medical care following the surgical referral. "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical

---

[2] Notably, the ALJ largely failed to consider the March 2016 EMG on remand, despite our directive to do so. The ALJ simply acknowledged the EMG's findings only to cite to records from the consultative exam that indicated normal grip strength. However, the ALJ again failed to note that the consultative examiner said plaintiff "complain[ed] of moderate pain on movement of the hands and wrists." (R. 549.). Thus, the ALJ's implication that the consultative exam records somehow mitigate the EMG findings is unsupported.

care before drawing a negative inference." S.S.R. 96–7p, 1996 WL 374186, at *7; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Here, there is evidence of plaintiff's homelessness, difficulty with transportation, and underlying mental health conditions.[3] (*E.g.*, R. 698, 706, 711-712, 717-18, 900). Each of these factors (on their own or taken collectively) could seemingly play a large role in hindering plaintiff from obtaining additional medical treatment for her carpal tunnel syndrome. The only evidence in the record showing that the ALJ considered these factors were certain questions the ALJ asked plaintiff during the hearing. However, the ALJ does not identify these factors in his written decision nor explain why a negative inference was made.[4] Accordingly, remand is also warranted for this reason. *See Ray v. Berryhill*, 915 F.3d 486, 490–91 (7th Cir. 2019) ("That was reversible error; an ALJ must not draw inferences about a claimant's lack of treatment without *exploring* the reasons for the inaction.") (emphasis added).

Lastly, because the ALJ intertwined an RFC limitation as part of his analysis of Dr. Hart's opinions, we briefly address the RFC. As previously stated, while acknowledging certain medical evidence that supported Dr. Hart's opinions, the ALJ concluded that said medical evidence only supported a limitation of "frequent" handling and fingering. (R. 683). This limitation appears to be arbitrary. Indeed, the ALJ does not explain the medical basis for this determination whatsoever. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ

---

[3] We also acknowledge that plaintiff testified as to her concerns about an ineffective surgery, which may have played a role in her failure to obtain the surgical procedure. Further, plaintiff's worries about unsuccessful treatment may be a permissible reason for drawing a negative inference as to lack of treatment. *See Dwayne O. v. Saul*, 2020 WL 354455 at *9 (N.D. Ill. 2020). However, here, the ALJ does not affirmatively explain whether he did, in fact, consider that statement as part of his analysis of plaintiff's conservative treatment.

[4] The Commissioner attempts to raise arguments on appeal attacking plaintiff's identified barriers to treatment that the ALJ did not rely on in his decision. This is improper. Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.2010).

cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."). Because the ALJ did not logically connect the RFC limitation to medical evidence in the record, the Court finds the limitation to be arbitrary. *See Jarnutowski v. Kijakazi*, 48 F. 4th 769, 777 (7th Cir. 2022) (reversing where the ALJ failed to build an "accurate and logical bridge" between the evidence and her conclusion that the claimant could perform medium work). Thus, remand is also required for this reason.[5]

In sum, the Court finds that the ALJ's rejection of Dr. Hart's opinions, the acceptance of which would have dictated a finding of disability, is not supported by substantial evidence. Additionally, to the extent it is not tied to the evaluation of Dr. Hart's opinions, the RFC limitation regarding frequent handling and fingering was also not supported by substantial evidence.

## Conclusion

For the reasons set forth above, the Court reverses the Acting Commissioner's decision, grants the plaintiff's motion for summary judgment [22], denies the Acting Commissioner's motion for summary judgment [27], and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                          **ENTERED:**

**Dated: May 16, 2023**

**M. David Weisman**
**United States Magistrate Judge**

---

[5] Because we have determined that the ALJ's rejection of Dr. Hart's opinions, along with a related RFC limitation, require remand, we need not address other issues raised by plaintiff.